**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| *IN RE SYNGENTA AG MIR 162 CORN LITIGATION* | Master File No. 2:14-MD-02591-JWL-JPO |
| THIS DOCUMENT RELATES TO: | MDL No. 2591 |
| *Heartland Corn Products v. Syngenta Seeds, LLC*, No. 2:20-cv-02168-JWL-JPO | |

**SYNGENTA'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

          **Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

CHOICE OF LAW ................................................................................................................. 3

ARGUMENT .......................................................................................................................... 3

I.      Because Heartland's Alleged Injuries Began More Than Six Years Before It Served The Complaint, Its Claim For Damages From Viptera Is Time-Barred. ............................ 3

          A.      A Claim Accrues In Minnesota When The Plaintiff Has Incurred "Some Damage." ................................................................................................... 4

          B.      Because Heartland's Complaint Alleges That It Was Harmed By The Commercialization Of Viptera, Its Viptera-Related Claim Accrued Well Before November 15, 2013. ................................................................................. 5

II.     The Continuing Tort Doctrine Does Not Apply. ................................................ 6

III.    *American Pipe* Tolling Does Not Make Heartland's Negligence Claim Over Viptera Timely. ................................................................................................. 9

IV.    Under The Court's Prior Rulings, Heartland's Negligence Claim Must Be Dismissed To The Extent It Is Based On Alleged Misrepresentations. ............................ 10

CONCLUSION .................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Antone v. Mirviss*,
 720 N.W.2d 331 (Minn. 2006) ............................................................................................1, 4, 6

*Bartlett v. Miller & Schroeder Municipals, Inc.*,
 355 N.W.2d 435 (Minn. Ct. App. 1984) ....................................................................................10

*City of Minneapolis v. Time Warner Cable, Inc.*,
 No. 05-994 ADM/AJB, 2005 WL 3036645 (D. Minn. Nov. 10, 2005) ......................................7

*Dalton v. Dow Chem. Co.*,
 158 N.W.2d 580 (Minn. 1968) ....................................................................................................6

*Davies v. W. Pub. Co.*,
 622 N.W.2d 836 (Minn. Ct. App. 2001) .....................................................................................8

*Fabio v. Bellomo*,
 504 N.W.2d 758 (Minn. 1993) ....................................................................................................6

*Francis v. Hansing*,
 449 N.W.2d 479 (Minn. Ct. App. 1989) .....................................................................................7

*Hope v. Klabal*,
 457 F.3d 784 (8th Cir. 2006) ......................................................................................................6

*Howe v. Fredrikson & Byron, P.A.*,
 No. A07-0021, 2007 WL 4303804 (Minn. Ct. App. Dec. 11, 2007) (unpub.) ..........................4

*Johnson v. Cont'l Airlines Corp.*,
 964 F.2d 1059 (10th Cir. 1992) ..................................................................................................3

*MacRae v. Grp. Health Plan, Inc.*,
 753 N.W.2d 711 (Minn. 2008) ....................................................................................................4

*Mille Lacs Band of Chippewa Indians v. Minnesota*,
 853 F. Supp. 1118 (D. Minn. 1994) ............................................................................................6

*Moreno v. Wells Fargo Bank, N.A.*,
 No. A12-1620, 2013 WL 1395629 (Minn. Ct. App. Apr. 8, 2013) (unpub.) .........................6, 8

*MW Ag, Inc. v. New Hampshire Ins. Co.*,
 107 F.3d 644 (8th Cir. 1997) ......................................................................................................3

*Rodriguez v. ECRI Shared Servs.*,
 984 F. Supp. 1363 (D. Kan. 1997) ............................................................................................11

*Sigurdson v. Isanti Cty.*,
 448 N.W.2d 62 (Minn. 1989)............................................................................................6, 7

*In re Syngenta AG MIR162 Corn Litig.*,
 131 F. Supp. 3d 1177 (D. Kan. 2015)...................................................................................3

*Tuttle v. Lorillard Tobacco Co.*,
 118 F. Supp. 2d 954 (D. Minn. 2000)...................................................................................6

*Veit v. ProSource Techs., Inc.*,
 879 N.W.2d 8 (Minn. Ct. App. 2016)...................................................................................4

**Statutes**

Minn. Stat. § 541.05..............................................................................................................1, 3

**Rules**

Minn. R. Civ. P. 3.01 ..................................................................................................................3

# **INTRODUCTION**

On November 15, 2019—over nine years after Syngenta launched Viptera in the fall of 2010 for planting in the spring of 2011, and more than five years after litigation over that commercialization began—Plaintiff Heartland Corn Products ("Heartland") filed this action in Minnesota state court asserting a single negligence claim as an ethanol producer in Minnesota. Heartland's claim for damages based on the commercialization of Viptera is time-barred under Minnesota's six-year statute of limitations. Minn. Stat. § 541.05.

Under Minnesota law, Heartland's claim accrued as soon as it incurred "some damage" from Syngenta's challenged conduct. *Antone v. Mirviss*, 720 N.W.2d 331, 335-36 (Minn. 2006). Heartland's Complaint expressly seeks to recover for "harm" from "[t]he contamination that occurred" when Syngenta introduced Viptera into the U.S. corn supply. Compl. ¶ 55. Heartland itself alleges that "introducing genetically modified traits" would "inevitably contaminate traded commodity lots," meaning that the harm it complains of occurred at the moment Syngenta commercialized Viptera for sale in the fall of 2010 or, at the latest, at the start of the corn planting season in the spring of 2011. *See id.* ¶ 59. Because Heartland sued more than eight years later, its claim is untimely.

Minnesota's continuing course of conduct doctrine—which typically applies to torts involving a long-term relationship like that between an employer and an employee or a doctor and patient—does not salvage Heartland's untimely claim. In Minnesota, neither the continuing effect of a past tort nor a pattern of supposedly similar conduct suffices to make a tort continuing. The harm Heartland complains of occurred immediately on sale. *See id.* The ensuing rejections and alleged decrease in the price of DDGS were thus continuing effects of alleged past conduct that do not toll the statute of limitations. Nor can Syngenta's commercialization of ***Duracade***—an entirely different corn seed containing an entirely different GM event—toll the statute of limitations as to

1

Heartland's claims based on the commercialization of *Viptera*.

*American Pipe* tolling also does nothing to solve the statute of limitations problem with Heartland's claim. Even if the statute of limitations was tolled between the first-filed class complaint on behalf of non-exporting non-producers like Heartland and the dismissal of those class allegations upon the filing of the Third Amended Master Non-Producer Complaint, more than six years still elapsed between Syngenta's commercialization of Viptera and Heartland's filing of this case.

Heartland's negligence claim concerning Viptera should be dismissed with prejudice under the statute of limitations, and its claims concerning Viptera and Duracade should be dismissed with prejudice to the extent premised on alleged misrepresentations.

## BACKGROUND

Heartland is a Minnesota cooperative that owns and operates a biorefinery which produces ethanol from corn and DDGS as a by-product of ethanol production. Compl. ¶¶ 11, 28. It purchases about 37 million bushels of corn a year, generating more than 100 million gallons of ethanol and around 275,000 short tons of DDGS. *See id.* ¶ 28. Heartland's business does not include exporting corn or DDGS to China, as it instead sells DDGS on the open market in the U.S. *See id.* ¶ 30. Heartland alleges harm in the form of "contamination" to the U.S. corn and DDGS supply, *see id.* ¶ 55, which it claims caused "physical damage to its property," *id.* ¶ 76, as well as "diminished prices for distillers grains in the United States," *id.* ¶ 64. Heartland asserts a single claim for negligence or gross negligence under Minnesota law. *See id.* ¶¶ 67-76.

On November 15, 2019, Heartland served a summons and complaint on Syngenta's registered agents in order to commence this lawsuit in the district court for Sibley County,

2

Minnesota.[1]  ECF No. 1-1; ECF No. 1-2.  On December 10, 2019, Syngenta removed the case to the U.S. District Court for the District of Minnesota.  The action was subsequently transferred to this MDL.  *See* Transfer Order, ECF No. 21.

## CHOICE OF LAW

Because this case was originally filed in Minnesota, Minnesota's choice-of-law rules apply here.  *See Johnson v. Cont'l Airlines Corp.*, 964 F.2d 1059, 1063 n.5 (10th Cir. 1992) (MDL court applies the choice-of-law rules of the State where the case was originally filed); *In re Syngenta AG MIR162 Corn Litig.*, 131 F. Supp. 3d 1177, 1188 (D. Kan. 2015) ("MTD Order") (same).  Based on the allegations in the Complaint regarding Heartland's location and citizenship, Minnesota would apply its own statute of limitations and there is no indication that a borrowing statute would cause the application of another State's statute of limitations.

## ARGUMENT

### I. Because Heartland's Alleged Injuries Began More Than Six Years Before It Served The Complaint, Its Claim For Damages From Viptera Is Time-Barred.

Heartland's Viptera-related claims are untimely under Minnesota's six-year statute of limitations.  Minn. Stat. § 541.05.  Heartland commenced this action, for statute of limitations purposes, upon service on November 15, 2019.  *See MW Ag, Inc. v. New Hampshire Ins. Co.*, 107 F.3d 644, 646 (8th Cir. 1997) (noting that under Minnesota procedure, commencement of an action occurs on service of summons).  But even on the face of the Complaint, Heartland admits that its alleged injuries began (which means it would have been able to sue) long before November 15, 2013.  Because Heartland's claim accrued more than six years before Heartland initiated this lawsuit, it is untimely and must be dismissed.

---

[1] Under Minnesota procedure, an action is commenced by service and the summons and complaint need not be filed with the clerk of court prior to service.  Minn. R. Civ. P. 3.01.

3

### A.  A Claim Accrues In Minnesota When The Plaintiff Has Incurred "Some Damage."

Minnesota takes "the middle ground" between the "occurrence" and "discovery" rules of accrual "by adopting the 'damage' rule of accrual." *Antone*, 720 N.W.2d at 335-36 (internal quotation marks partially omitted); *see also MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 719 (Minn. 2008). Under this rule, a cause of action accrues and the statute of limitations begins to run as soon as "'some' damage has occurred." *Id*. This damage "may be any damage caused by the negligent act and is not limited to the damage or cause of action 'specifically identified in the complaint.'" *MacRae*, 753 N.W.2d at 720 (quoting *Antone*, 720 N.W.2d at 336).

"'Some damage' is defined broadly." *Veit v. ProSource Techs., Inc.*, 879 N.W.2d 8, 10 (Minn. Ct. App. 2016) (quoting *Antone*, 720 N.W.2d at 338). As the Minnesota Supreme Court has explained, it does not matter that the injury was "unbeknownst to" the plaintiff, *Antone*, 702 N.W.2d at 337, nor that he lacked "the ability to ascertain the exact amount of damages," *id.* at 338—the relevant question is whether the plaintiff sustained "an injury that resulted in some damages sufficient to survive a motion to dismiss," *id.* at 337-38. For example, in *Antone*, the leading case on accrual in Minnesota, the Supreme Court held that a claim for legal malpractice in drafting an invalid prenuptial agreement accrued as soon as the plaintiff became married, because it was at that point when the laws of marital and nonmarital property impacted him even though he had no need to invoke the prenuptial agreement at the time. *See id.* To similar effect, the Minnesota Court of Appeals has held that when a plaintiff entered into a stock option agreement without knowing that the put options he was receiving lacked any "floor" price, his claims against his attorney accrued when the agreement was signed, not when the options could have been exercised. *See Howe v. Fredrikson & Byron, P.A.*, No. A07-0021, 2007 WL 4303804, at *3 (Minn. Ct. App. Dec. 11, 2007) (unpub.). In short, once any damage occurs, the claim has accrued

4

and the plaintiff is on the clock.

### B. Because Heartland's Complaint Alleges That It Was Harmed By The Commercialization Of Viptera, Its Viptera-Related Claim Accrued Well Before November 15, 2013.

Heartland's Complaint concedes that it suffered injury more than six years before it sued. Thus—even if it ascertained additional alleged losses thereafter—it sued several years too late.

Heartland claims "harm" from the "contamination" of the "U.S. corn and DDGS supply with the traits found in Viptera." Compl. ¶ 55. Heartland claims to have suffered this harm long before any impact on the market price of DDGS—as shown by the fact that Heartland's sole claim for negligence expressly alleges that "Heartland suffered injury *and physical damage to its property* by the *sale and distribution* of Viptera and Duracade by Syngenta as outlined herein," and demands compensatory damages for those losses. *Id.* ¶ 76 (emphasis added).

Based on Heartland's own allegations, that "contamination" occurred long before November 2013. Heartland alleges that "[b]eginning with the *2011* growing season, Syngenta began marketing, distributing, and selling" Viptera. *Id.* ¶ 3 (emphasis added). Indeed, Heartland has an entire section of its Complaint devoted to how "*Syngenta's Genetically Modified Corn Contaminates the U.S. Corn and DDGS Supply*," *id.* ¶¶ 49-59 (emphasis added), in which substantially all of its allegations concern events predating November 2013. In fact, Heartland specifically challenges the sale and planting of Viptera corn in 2011, 2012, and 2013, "resulting in cross-pollination and commingling of Viptera directly alongside other commodity corn." *Id.* ¶ 54. In short, whatever "contamination" there was happened long before November 2013, and thus more than six years before Heartland sued.

Under Minnesota law, that means that Heartland's claim had accrued by the spring of 2011. If "contamination" constitutes damage, as Heartland alleges, that damage occurred when Viptera corn was commercialized in the fall of 2010 or, at the latest, when it first was planted in the spring

5

of 2011.  In short, Heartland's own allegations of "contamination" underscore that it could have sued there and then.  "Where that occurs[,] the cause of action comes into being and the applicable statute of limitations begins to run even though the ultimate damage is unknown or unpredictable." *Dalton v. Dow Chem. Co.*, 158 N.W.2d 580, 585 (Minn. 1968).  Because, under Minnesota law, "the statute of limitations begins to run[] on the occurrence of *any* compensable damage, whether specifically identified in the complaint or not," the allegation that Heartland suffered *additional* harm after vessels began to be rejected cannot save its claim.  *Antone*, 720 N.W.2d at 336 (emphasis added).

## II. The Continuing Tort Doctrine Does Not Apply.

Heartland cannot rely on the "continuing tort" (or "continuing course of conduct") doctrine to save its claim for damages from the commercialization of Viptera.  In Minnesota, the continuing tort doctrine turns on "whether a defendant owed a continuing obligation or duty to the plaintiff, or some other relevant person." *Moreno v. Wells Fargo Bank, N.A.*, No. A12-1620, 2013 WL 1395629, at *5 (Minn. Ct. App. Apr. 8, 2013) (unpub.).  For that reason, Minnesota courts tend to apply the doctrine in cases involving ongoing relationships such as employment or a doctor's treatment of a patient.  *See, e.g.*, *Sigurdson v. Isanti Cty.*, 448 N.W.2d 62, 66 (Minn. 1989) (concluding that discriminatory job classification system was "a continuing violation"); *Fabio v. Bellomo*, 504 N.W.2d 758, 762 (Minn. 1993) (noting that "continuing course of treatment" delays accrual under Minnesota medical malpractice law, but holding that repeated examinations that missed a tumor did not constitute a continuing course of treatment).

Under Minnesota law, "a plaintiff who is merely 'feeling the present effects' of a past wrongful act may not avoid the statute of limitations." *Hope v. Klabal*, 457 F.3d 784, 793 (8th Cir. 2006) (quoting *Mille Lacs Band of Chippewa Indians v. Minnesota*, 853 F. Supp. 1118, 1126 (D. Minn. 1994)); *see also Tuttle v. Lorillard Tobacco Co.,* 118 F. Supp. 2d 954, 963 (D. Minn.

6

2000) ("If a mere continuation of effect will extend the limitation period, the statute of limitations would be effectively emasculated."). Moreover, a party cannot bypass the statute of limitations by claiming that a defendant had a duty to undo or fix its allegedly tortious conduct. *See Francis v. Hansing*, 449 N.W.2d 479, 482 (Minn. Ct. App. 1989) (rejecting continuing tort theory when physician negligently failed to remove an IUD upon inserting a new one).

Heartland's situation is unlike any case in which the continuing tort doctrine has been applied in Minnesota. For one thing, Heartland alleges that contamination was "inevitabl[e]" once commercialization began. *See* Compl. ¶ 59. As this Court recognized in dismissing Louis Dreyfus Company's Lanham Act claims for failing to state a plausible causation theory, if a plaintiff alleges that the bell could not be unrung after first planting, then it cannot point to subsequent conduct as the supposed source of its injuries. *See In re Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 489098, at *2 (D. Kan. Jan. 19, 2018). Continuing to sell the product in subsequent seasons may have had ongoing ***effects***, but that does not mean the tort continues. *See Sigurdson*, 448 N.W.2d at 67.

Heartland also cannot invoke the continuing tort doctrine for another reason: because of the doctrine's origins in special relationships such as medical malpractice, courts in Minnesota have questioned whether the continuing tort theory can ***ever*** be applied when the defendant's allegedly tortious conduct "is open, public, and known to the plaintiff." *City of Minneapolis v. Time Warner Cable, Inc.*, No. 05-994 ADM/AJB, 2005 WL 3036645, at *7 (D. Minn. Nov. 10, 2005); *see also id.* ("As Defendants were the only possible party who could convert channel capacity, and there is no allegation that Minneapolis was somehow unaware of the alleged conversion or that Defendants fraudulently hid the conversion from Minneapolis, the continuing tort liability theory does not apply in this instance."). Here, Heartland does not and cannot allege that Viptera corn seed was launched in secret into the U.S. commodity corn supply, further

7

distinguishing this case from any other in which Minnesota courts have found that the continuing tort doctrine applied.

Nor can Heartland use the launch of ***Duracade*** to revive its untimely claims based on ***Viptera***. Minnesota courts have rejected efforts to turn a series of challenged acts into a supposed continuing tort in order to circumvent the statute of limitations. The doctrine does not apply where, as here, the alleged wrongful acts are "separate actions each of which allegedly damaged" the plaintiff. *Davies v. W. Pub. Co.*, 622 N.W.2d 836, 841–42 (Minn. Ct. App. 2001). In *Davies*, for example, the Minnesota Court of Appeals concluded that a series of payments each triggered a separate statute of limitations and could not be aggregated to revive untimely claims concerning older payments. *See id.* Similarly, in *Radloff v. First American Nat'l Bank of St. Cloud, N.A.*, an alleged campaign of harassment was not a continuing tort; rather, it was a series of incidents, each triggering its own limitations period. 455 N.W.2d 490, 493 (Minn. Ct. App. 1990). Heartland's handful of allegations about Duracade do not give it license to revive its claims about Viptera.

Minnesota's firm rejection of "related" harm as a sufficient basis for the continuing tort doctrine also distinguishes Heartland's case from LDC's claims under Connecticut law. This Court held that under Connecticut law, the continuing tort doctrine could be used to extend Connecticut's strict three-year statute of repose because LDC alleged "later wrongful conduct related to the original breach of duty." *In re Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 5620657, at *5 (D. Kan. Oct. 30, 2018). Both *Davies* and *Radloff*, however, rejected relatedness as a sufficient basis for applying the continuing tort doctrine under Minnesota law—particularly given that Minnesota's six-year statute of limitations is twice as long as Connecticut's three-year statute of repose. *Davies*, 622 N.W.2d at 841–42 (concluding that despite pattern of payments to preferred stockholders, "the alleged wrongful acts here are not a course of continuing conduct, but rather 16 separate actions each of which allegedly damaged respondents");

8

*Radloff*, 455 N.W.2d at 492–93 (holding that alleged "pattern of illegal activities" was not enough to render the alleged torts "continuous in nature"). Minnesota's rejection of relatedness as a test for a continuing tort similarly means that the presence of the MIR162 event in Duracade corn does not make Duracade a mere continuation of Viptera, any more than the use of overlapping design elements on two different car models would revive untimely claims about one car model just because the design was used in another car model.

### III. *American Pipe* Tolling Does Not Make Heartland's Negligence Claim Over Viptera Timely.

Finally, *American Pipe* tolling cannot salvage the timeliness of Heartland's claim, even assuming that the doctrine applies here. The first class action complaint on behalf of non-exporting non-producers like Heartland was the *Rail Transfer* case, filed on October 24, 2014. *Rail Transfer, Inc. v. Syngenta Corp.*, No. 2:15-cv-02025-JWL-JPO (D. Kan.) ECF No. 1, ¶ 111.[2] *Rail Transfer*'s class action allegations were, in turn, removed at the latest when the Third Amended Master Non-Producer Complaint was filed on September 19, 2016. *In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 2530. Indeed, the MDL Plaintiffs stated in a public filing on June 15, 2016 that they intended to dismiss their class action allegations, putting Heartland on notice then that it would need to file suit individually to assert its rights. *In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 2237 at 2 ("Non-Producer Plaintiffs only also seek leave to omit the current class action allegations."). Thus, if *American Pipe* tolling applied starting with the filing of the *Rail Transfer* complaint, then **at most** 696 days (the time period between the first *Rail Transfer* complaint and the Third Amended

---

[2] *Trans Coastal* filed the first non-producer class complaint, but did so only on behalf of exporters. *Trans Coastal Supply Co., Inc. v. Syngenta AG*, No. 2:14-cv-02637-JWL (D. Kan.) ECF No. 1, ¶ 166 (putative class "engaged in the business of exporting U.S. corn and DDGS to China"). Heartland does not and cannot allege that it is in the business of exporting corn or DDGS—it simply sells DDGS into the market in the U.S. Compl. ¶ 30.

Master Non-Producer Complaint) would be excluded from the statute of limitations calculation—and, if anything, the tolling period would be shorter given the MDL Plaintiffs' public filing three months earlier announcing that they would not pursue class-wide relief for non-producers. *American Pipe* tolling therefore would roll back the clock to December 20, 2011 at the earliest—long after the first commercial sale of Viptera in the fall of 2010 or planting of Viptera in the spring of 2011.[3]

To the extent Heartland contends that tolling applies notwithstanding the filing of the Third Amended Master Non-Producer Complaint, that argument would fail because Minnesota courts reject 'repeat' or successive applications of *American Pipe* tolling, meaning the dismissal of class-action allegations in the original complaint is determinative. *See Bartlett v. Miller & Schroeder Municipals, Inc.*, 355 N.W.2d 435, 440-41 (Minn. Ct. App. 1984) ("We do not believe the interests of judicial economy and the other policies served by class action litigation justified an additional tolling of the statute."). Here, the extinguishment of the class action allegations in the Third Amended Master Non-Producer Complaint—if not the MDL leadership's public filing announcing they were dropping the class action allegations—should have put Heartland on notice that it had to act if it wanted to bring timely individual claims. *Id.* at 440.

### IV. Under The Court's Prior Rulings, Heartland's Negligence Claim Must Be Dismissed To The Extent It Is Based On Alleged Misrepresentations.

Finally, the Court's prior rulings apply to the extent that Heartland bases its negligence claim on alleged misrepresentations.[4] In the Producer Plaintiffs' case, the Court dismissed as a

---

[3] Heartland commenced this action on November 15, 2019. Six years before that date is November 15, 2013, and an additional 696 days before that falls on December 20, 2011. *See* Date Calculator: Add to or Subtract From a Date, *available at* https://www.timeanddate.com/date/dateadd.html.

[4] Even though Heartland was not named in a Master Complaint and did not file a Notice to Conform, "that does *not* exempt [its] individual case from the Court's Orders with respect to the Master Complaint." *See In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 287 at 7 (emphasis in original). Having

matter of law negligence claims that were "based in whole or in part on any alleged misrepresentation, including any misrepresentation made in the deregulation petition or the *Bunge* suit." *In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 3051 at 9; *see also* Minn. Order on Syngenta's Mot. for Partial Judgment on Pleadings at 14-15 (attached as Ex. 1) (agreeing that "Plaintiffs are thus precluded from asserting claims for negligence on the basis of misrepresentations"); *Rodriguez v. ECRI Shared Servs.*, 984 F. Supp. 1363, 1368 (D. Kan. 1997) ("to hold otherwise would allow plaintiff to circumvent the more stringent requirements of the torts of defamation, negligent misrepresentation, and tortious interference"). Heartland's negligence claim fails for the same reason insofar as it seeks to rely on alleged misrepresentations. *See, e.g.*, Compl. ¶ 54 (alleging that "Syngenta misrepresented and deceived industry stakeholders concerning the standing of its petition for deregulation of Viptera/MIR 162 with the Chinese government"). Heartland does not assert a negligent misrepresentation claim, nor could it satisfy the stringent requirements associated with such a claim. Heartland does not allege any facts showing, for example, that Syngenta is in the business of providing information for the guidance of others or that any statements Syngenta supposedly provided about its Viptera and Duracade products were supplied for the guidance of business transactions by a cooperative like Heartland.[5] The Court should apply its earlier holding that negligence cannot be based on misrepresentations, and thus dismiss Heartland's negligence claim

---

not objected to any orders directed to the "Master Complaint," Heartland has waived any arguments that such orders should not apply to its individual case. *See id.* at 7-8.

[5]   Syngenta made similar arguments in moving to dismiss LDC's complaint. Agreeing "that the complaint could reasonably be interpreted to assert such theories of recovery," the Court "grant[ed] Syngenta's motion as unopposed with respect to these theories, and it dismisse[d] any claim by LDC to the extent based on any of these theories." *In re Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 489098, at *10 (D. Kan. Jan. 19, 2018).

concerning Viptera and Duracade to the extent premised on alleged misrepresentations.[6]

## CONCLUSION

For the reasons above, Heartland's negligence claim concerning Viptera should be dismissed with prejudice under the statute of limitations, and its claims concerning Viptera and Duracade should be dismissed with prejudice to the extent premised on alleged misrepresentations.

---

[6] Out of an abundance of caution, Syngenta preserves all of its prior arguments for dismissal, including but not limited to the following: (1) Syngenta did not owe a duty of reasonable care in negligence, *see In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 857 at 21-46, ECF No. 950 at 4-21, ECF No. 3344 at 9-30; (2) there is no proximate cause as a matter of law, *see In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 857 at 21-46, ECF No. 950 at 21-26, ECF No. 3344 at 30-42; (3) the stranger economic loss doctrine bars negligence claims like Heartland's to the extent it seeks market losses due to the alleged closure of China as an export market for U.S. DDGS, *see In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 857 at 46-56, ECF No. 950 at 26-52, ECF No. 963 at 2-34, ECF No. 3344 at 10-23; and (4) any non-preempted theory of negligence based on a duty to conduct a limited launch fails to establish causation as a matter of law, *see In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 2190 at 20-28, ECF No. 2391 at 11-17, ECF No. 3344 at 65-66. Pursuant to Scheduling Order No. 1, Syngenta does not repeat these arguments that the Court has already rejected and instead incorporates them by reference solely for appellate preservation purposes. *See In re Syngenta AG MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan.) ECF No. 123 ¶ 5(h).

12

Dated: June 19, 2020                         Respectfully submitted,

/s/ Thomas P. Schult
Thomas P. Schult (tschult@berkowitzoliver.com)
Jennifer B. Wieland (jwieland@berkowitzoliver.com)
**BERKOWITZ OLIVER LLP**
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
Telephone: (816) 561-7007
Fax: (816) 561-1888

*Liaison Counsel for Syngenta Defendants*


Leslie M. Smith, P.C. (leslie.smith@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Fax: (312) 862-2200

Michael D. Jones, P.C. (mjones@kirkland.com)
Edwin John U, P.C. (edwin.u@kirkland.com)
Ragan Naresh, P.C. (ragan.naresh@kirkland.com)
Patrick Haney (patrick.haney@kirkland.com)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 389-5000
Fax:   (202) 389-5200

*Lead Counsel for Syngenta Defendants*

## CERTIFICATE OF SERVICE

I certify that on June 19, 2020, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

*/s/ Thomas P. Schult*
Thomas P. Schult