# EXHIBIT 1

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

In re: Syngenta Litigation

Case Type: Civil Other
Hon. Thomas M. Sipkins

This Document Relates to: ALL ACTIONS

FILE NO. 27-CV-15-3785

**ORDER**

---

The above-entitled matter came on for hearing before the Honorable Thomas M. Sipkins, Judge of District Court, on February 9, 2017, pursuant to the Defendants' motion for judgment on the pleadings.

Attorneys Daniel E. Gustafson and Lewis A. Remele, Jr. appeared on behalf of Plaintiffs.

Attorneys Patrick F. Philbin and Patrick Haney appeared on behalf of Defendants.

Based on all the files, records and proceedings herein, together with the arguments of counsel, the Court makes the following:

**ORDER**

**IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for judgment on the pleadings is granted in part and denied in part.

2. Any claims in the Second Amended Master Complaint for Producers and Non-Producers (Non-Class) and Third Amended Minnesota Class Action Master Complaint for Producers that impose a requirement of inspection or description based on the presence of genetic traits in Viptera or Duracade as a condition of shipment or sale of grown corn in interstate or foreign commerce are preempted by the United States Grain Standards Act and thus dismissed with prejudice.

Exhibit 1
Page 1

Case 2:20-cv-02168-JWL-JPO   Document 28-1   Filed 06/19/20   Page 3 of 18

3. Plaintiffs' claims in the Second Amended Master Complaint for Producers and Non-Producers (Non-Class) and Third Amended Minnesota Class Action Master Complaint for Producers for negligence based on misrepresentations are dismissed with prejudice.

4. The attached Memorandum of Law is incorporated herein.

Dated: 3-21-2017

BY THE COURT:

Thomas M. Sipkins
Judge of District Court

2

Exhibit 1
Page 2

# MEMORANDUM OF LAW

I.   **Factual History**[1]

Plaintiffs in this litigation consist of approximately 50,000 producers and non-producers of corn in the United States. Defendant Syngenta[2] develops, produces, and sells corn seed. Plaintiffs and Syngenta are part of an interconnected market that demands and expects all market participants to act, at least in part, for the mutual benefit of all others in their interconnected web.

In the years before 2007, Syngenta developed a new genetically modified ("GM") corn trait called MIR162. Syngenta commercialized corn seed with the MIR162 trait under the brand name Agrisure Viptera ("Viptera") and later Agrisure Duracade ("Duracade") which added Event 5307. Syngenta applied for regulatory approval of Viptera from numerous markets. The United States Department of Agriculture ("USDA") deregulated MIR162 in April 2010, which allowed Syngenta to sell Viptera to U.S. farmers. Syngenta applied for import approval of Viptera from China in March 2010. Syngenta commercialized Viptera in 2011. At that time, China had not approved Viptera and Syngenta knew China was a key and growing market for U.S. corn. Plaintiffs allege Syngenta should have waited to market Viptera and/or should have withdrawn it from the market before planting.

Plaintiffs also contend Syngenta commercialized Viptera "without adequate systems in place to either isolate Viptera or channel it away from markets, including China, from which approval was not obtained." Separating crops by certain distances can reduce cross-pollination between different varieties of corn. Isolation stewardship procedures that could reduce cross-

---

[1] The facts are as alleged in the Second Amended Master Complaint for Producers and Non-Producers (Non-Class) ("Individual Claims Complaint") and Third Amended Minnesota Class Action Master Complaint for Producers ("Class Action Complaint") (collectively "Master Complaints").

[2] There are six Syngenta-related companies identified as Defendants in the Individual Claims Complaint. Syngenta Seeds, Inc. is the only Defendant named in the Class Action Complaint.

3

Exhibit 1
Page 3

pollination include educating farmers on cross-pollination, requiring farmers to use border rows to separate crops, and to have farmers coordinate planting. The Master Complaints indicate these measures may not result in completely reducing cross-pollination. Corn varieties are also commingled during harvesting, storage, and shipping. Containment stewardship measures that can be taken to reduce or prevent commingling include cleaning combine and storage areas, using dedicated facilities, inspections, and tracing the product through the supply chain. In addition, commingling can be addressed with channeling stewardship procedures by requiring certain corn varieties to be sold to certain markets.

Plaintiffs claim Syngenta knew of the "very high likelihood" that MIR162 would disseminate throughout the supply chain and move into export channels. Syngenta took no steps to prevent cross-pollination and commingling; and any measures Syngenta did take were inadequate. Therefore, "it was inevitable that Viptera corn would move into export channels, including China, and cause trade disruption, as Syngenta well knew."

In Syngenta's USDA petition and other communications, it represented: (1) that there should be no effects on the U.S. maize export market; (2) regulatory filings were in process for China; and (3) it would enter into stewardship agreements with farmers that would require channeling MIR162 away from markets where it was not yet approved for import. Plaintiffs allege these representations were false. Syngenta knew China was a key export country but misled Plaintiffs by misrepresenting and omitting facts about the importance of China and the timing of Viptera import approval in China.

Beginning in November 2013, China rejected shipments of corn that tested positive for the presence of MIR162. According to Plaintiffs, China's rejection of U.S. corn caused corn prices to drop in the United States. China eventually approved the import of Viptera in

December 2014. In 2014, Syngenta applied to China for import approval of Duracade. To date, China has not approved Duracade for import.

## II.  Procedural History

Thousands of producers, as well as grain handlers and exporters, filed lawsuits against Syngenta in various federal and state courts. Master Complaints for the Minnesota class and non-class Producers and Non-Producers were filed on October 2, 2015 and First Amended Master Complaints were filed on November 6, 2015. Syngenta moved the Court to dismiss the Master Complaints. In an Order dated April 7, 2016, the Court dismissed some claims but found Syngenta had a duty to exercise reasonable care in the manner, timing, and scope of commercialization of Viptera and Duracade. In accordance with the Court's Order, Plaintiffs filed Second Amended Master Complaints on May 5, 2016 and Syngenta answered them on June 20, 2016.

On November 3, 2016, the Court certified a class of Minnesota Producers that priced corn after September 2013 and did not grow Viptera or Duracade. Following motion practice regarding notice to the class and punitive damages, Plaintiffs filed a Third Amended Class Action Complaint on February 24, 2017.

The Master Complaints include claims for negligence based on a duty to use reasonable care in the timing, scope, and manner in the commercialization of Viptera and Duracade. Plaintiffs allege Syngenta breached this duty by:

  a. Prematurely commercializing Viptera and/or Duracade on a widespread basis without reasonable or adequate safeguards;

  b. Instituting a careless and ineffective stewardship program;

  c. Failing to enforce or effectively monitor its stewardship program;

  d. Selling Viptera and/or Duracade to thousands of corn farmers with knowledge that they lacked the mechanisms, experience, ability, and/or competence to effectively isolate or channel those products;

    e.    Failing to adequately warn and instruct farmers on the dangers of contamination by MIR162 and at least the substantial risks that planting Viptera would lead to the loss of the Chinese market;

    f.    Distributing misleading information about the importance of the Chinese market; and

    g.    Distributing misleading information regarding the timing of China's approval of Viptera and/or Duracade.

Plaintiffs also assert claims for violations of consumer protections statutes, including Minn. Stat. §§ 325D.13 and 325D.15. Plaintiffs allege Syngenta failed to act responsibly when commercializing Viptera and Duracade and used false or misleading descriptions of fact which caused confusion and mistake. The misrepresentations were made to the press, investment analysts, stakeholders, and the public. The misrepresentations include: 1) commercialization should not cause an adverse impact on export markets; 2) Syngenta would communicate the stewardship requirements with an education program; 3) application for approval from China was in progress; and 4) MIR162 corn would be channeled away from unapproved markets. The misrepresentations regarding China approval include that there was not an effective system for isolation or channeling of Viptera and Duracade and without it, it was virtually certain Viptera and Duracade would disseminate throughout the corn supply.

The Master Complaints include claims for strict liability duty to warn claiming Syngenta failed to inform Viptera and Duracade growers of the potential for Viptera and Duracade to contaminate non-Viptera and non-Duracade corn. Syngenta had a duty to warn producers that did not grow Viptera or Duracade about potential dangers of its decision to commercialize. Syngenta did not adequately warn of the danger or give adequate instructions on how producers could protect themselves from the danger.

The Individual Claims Complaint includes claims for tortious interference. Plaintiffs aver they had a business relationship with elevators/exporters and a reasonable expectation of economic gain and that such relationships would continue. Syngenta knew this and despite such knowledge, made representations that deceived Plaintiffs about whether customers would accept Viptera and Duracade corn or contaminated corn. Syngenta interfered with future business relationships by prematurely releasing Viptera and Duracade knowing it would contaminate corn. This prevented U.S. corn from being sold to certain markets. Syngenta's conduct prevented the export of U.S. corn, causing harm to Plaintiffs because they were unable to sell at the price they reasonably expected to receive.

## II.   Legal Analysis

### A.   Standard

Syngenta moves the Court for judgment on the pleadings. "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[3] Minn. R. Civ. P. 12.03. A Rule 12.03 motion for judgment on the pleadings follows the same standard as a Rule 12.02(e) motion to dismiss for failure to state a claim. The Court must determine whether the complaint sets forth a legally sufficient claim for relief. *Burt v. Rackner, Inc.*, 882 N.W.2d 627, 629 (Minn. Ct. App. 2016). A pleading will be dismissed only if it appears to a certainty from the pleadings as a whole that no facts exist which could be introduced consistent with the pleadings to support granting the relief demanded. *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) (citing *Northern States Power Co. v. Franklin*, 122 N.W.2d 26, 27 (Minn. 1963)). In deciding a motion for judgment on the pleadings, the Court must accept the facts alleged in the

---

[3] Plaintiffs' argument that Syngenta's motion should be denied as untimely is rejected. The Class Action Master Complaint was amended after the motion was heard. The new pleading, however, does not affect the consideration and analysis of Syngenta's motion for judgment on the pleadings. The motion was heard early enough so as not to delay the trial. Syngenta's motion is not untimely under Minn. R. Civ. P. 12.03.

complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See Williams v. Board of Regents of Univ. of Minnesota*, 763 N.W.2d 646, 651 (Minn. Ct. App. 2009).

### B. Express Preemption

Syngenta argues that Plaintiffs' claims are preempted by the United States Grain Standards Act ("GSA"), 7 U.S.C. §§ 71-87k. Congress intended the GSA to "establish a uniform system for the inspection and grading of … grain moving in interstate commerce." *Farmers' Grain Co. of Embden v. Langer*, 273 F. 635, 651 (8th Cir. 1921). Section 74(a) begins with Congress's assertion that "[g]rain is an essential source of the world's total supply of human food and animal feed and is merchandised in interstate and foreign commerce," and that the GSA's regulation of grain and grain transactions "is necessary to prevent or eliminate burdens on such [interstate or foreign] commerce and to regulate effectively such commerce." 7 U.S.C. § 74(a). The GSA contains an express preemption provision, which states:

> No State or subdivision thereof may require the inspection or description in accordance with any standards of kind, class, quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce, or require any license for, or impose any other restrictions upon the performance of any official inspection or weighing function under this chapter by official inspection personnel. Otherwise nothing in this chapter shall invalidate any law or other provision of any State or subdivision thereof in the absence of a conflict with this chapter.

7 U.S.C. § 87g(a).

Pursuant to the Supremacy Clause, Congress has the power to preempt state law. *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). Preemption can be accomplished expressly, by enacting a statute containing an express preemption provision, or impliedly. *Id.* at 2500-01. When determining the scope of a preemption provision, the court must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (internal

Exhibit 1
Page 8

quotation omitted). When a statute contains an express preemption clause, the court may not apply a presumption against preemption but must instead "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938, 1946, 195 L. Ed. 2d 298 (2016) (quotation and citation omitted).

Accordingly, the Court must examine the plain language of the relevant provision, "[n]o State … may require the inspection or description in accordance with any standards of … quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce." 7 U.S.C. § 87g(a). First, the provision states that it applies to the conduct of states. Parties may agree by contract to apply their own descriptions and standards for a purchase of grain, *see* 7 U.S.C. § 77(a)(1), but States are prohibited from doing so, *see* 7 U.S.C. § 87g(a). Furthermore, States cannot "avoid preemption by shifting their regulatory focus from one company to another in the same supply chain." *American Trucking Associations, Inc. v. City of Los Angeles, Cal.*, 133 S. Ct. 2096, 2104 (2013); *see also, Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008). This means States cannot regulate grain handlers by placing requirements on others in the supply chain, such as seed manufacturers.

The States are then prohibited from making a requirement. The term "requirement" includes obligations that take the form of common law rules. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). "Common-law liability is premised on the existence of a legal duty, and a tort judgment therefore establishes that the defendant has violated a state-law obligation" to carry out the actions required to fulfill a particular legal duty. *Riegel v. Medtroninc, Inc.*, 552 U.S. 312, 324 (2008). A common law duty imposed under state tort law qualifies as a state "requirement" that would be preempted by the language in the express

preemption provision here. *Id.* at 332. The GSA thus preempts applicable state tort laws.

The types of requirements that are prohibited are those for "the inspection or description in accordance with any standards of … characteristics of grain." The parties do not dispute that one "characteristic" of grain is the presence of a genetic trait and that "grain" refers to grown corn. The seed at issue did not become a "grain" subject to the GSA until after it grew into corn. Therefore, the preemption provision prohibits requirements of inspection or description based on the presence of the genetic trait MIR162 in corn.

Finally, the preemption clause specifies which transactions the States may not regulate. State laws imposing requirements are prohibited when they are a condition of shipment or sale of corn in interstate or foreign commerce. Tort laws imposing a duty on intrastate sales and shipments of corn are thus not preempted.

Pursuant to the plain language of the express preemption provision, the GSA preempts any claim that imposes a state tort law duty that requires the inspection or description of corn according to the presence of the genetic traits in Viptera and Duracade as a condition of shipment or sale of the corn in interstate or foreign commerce. This interpretation is consistent with rulings in companion cases that have considered the GSA preemption clause in the context of related claims. *See In re: Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 4382772 (D. Kan. Aug. 17, 2016); *Tweet v. Syngenta AG*, No. 3:16-CV-00255-DRH, 2017 WL 54345 (S.D. Ill. Jan. 4, 2017).

The real dispute here lies not with the plain language of the preemption clause but the application of the provision to Plaintiffs' claims. The parties profess agreement with this scope of preemption. Their description of the preempted claims, however, differs substantially. Syngenta claims all of Plaintiffs' claims except the assertion that Syngenta should have refrained from selling

Viptera and Duracade seeds at all without Chinese approval are preempted. Plaintiffs argue only a small portion of their theories of negligence are preempted. The Court will review Plaintiffs' claims in light of the scope of the express preemption provision.

### 1.     Negligence

Plaintiffs' claim that Syngenta should not have commercialized Viptera prior to Chinese approval is not preempted. Five of the seven listed bases for negligence in the Master Complaints assert Syngenta was negligent in commercializing Viptera without adequate safeguards. The stewardship practices discussed above generally fall into three categories: isolation, containment, and channeling. Plaintiffs' claims that Syngenta is liable based on inadequate containment or channeling measures are preempted because they would require Syngenta to have undertaken measures, or require Syngenta to require others, to segregate Viptera corn. Examples of these preempted measures include contract requirements, inspection, or tracing the product through the supply chain. Some of Plaintiffs' theories of negligence, however, survive preemption. Claims based on the use of isolation measures would apply to actions taken with regard to seed and not corn. Therefore, claims based on a duty to assist in the isolation of seed through contract requirements and education are not preempted. In addition, any claims that would not involve interstate or foreign commerce are not preempted.

### a.     Causation

Syngenta argues that any of Plaintiffs' surviving claims based on a duty to undertake isolation measures fail for lack of causation.[4] "[I]n order for a party's negligence to be the proximate cause of an injury 'the act [must be] one which the party ought, in the exercise of

---

[4] Syngenta did not cite any case law with respect to the element of causation as it relates to Plaintiffs' specific claims. Syngenta's argument refers to the "hole in the causation argument of Plaintiffs' negligence claim." The Court thus considered this argument applicable only to the negligence claim.

11

Exhibit 1
Page 11

ordinary care, to have anticipated was likely to result in injury to others.'" *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (quoting *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 113 (Minn. 1992)). Plaintiffs must show defendants' conduct was a substantial factor in bringing about the injury. *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn. 1980). Generally, whether the defendant's negligence proximately caused the plaintiff's injuries is a question of fact for the jury. *Lubbers*, 539 N.W.2d at 402. When reasonable minds could reach only one conclusion, the existence of proximate cause is a question of law. *Id.*

Syngenta claims judgment on the pleadings should be granted because the Master Complaints allege that cross-pollination cannot be completely avoided and thus Viptera contamination was inevitable. The Court does not read the Master Complaints so narrowly. A fair reading of the Master Complaints could be that: (1) isolation measures could be taken to reduce cross-pollination; (2) Syngenta failed to take these measures, and (3) therefore, cross-pollination was inevitable. Plaintiffs may argue that even if contamination was practically inevitable as alleged, Syngenta was nonetheless negligent in failing to take certain actions that would have prevented Plaintiffs' injuries. In any event, a party can plead alternative or inconsistent theories. *See* Minn. R. Civ. P. 8.05(b); *Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 37-38 (Minn. Ct. App. 2012). Furthermore, causation is a question of fact. This is not a situation where reasonable minds could arrive at only one conclusion based on the allegations in the pleadings.[5]

### b. Misrepresentations

The other two bases of negligence listed in the Master Complaints allege Syngenta distributed misleading information regarding the Chinese market and approval of Viptera and Duracade. Plaintiffs included misrepresentations as a theory of negligence but did not include a claim for

---

[5] On March 17, 2017, the Court heard, *inter alia*, Syngenta's motion for summary judgment. The Court will consider the issue of causation under the summary judgment standard in that motion.

12

Exhibit 1
Page 12

negligent misrepresentation. Negligence is generally defined as the failure "to exercise such care as persons of ordinary prudence usually exercise under such circumstances." *Flom v. Flom*, 291 N.W.2d 914, 916 (Minn. 1980) (citations omitted). The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (citing *Schmanski v. Church of St. Casimir*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954)). To prevail on a negligent misrepresentation claim under Minnesota law, a plaintiff must establish: (1) a duty of care owed by the defendant to the plaintiff; (2) the defendant supplies false information to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information. *Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012). In addition, when the harm suffered is only pecuniary loss, a more restricted rule of liability applies "because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it." Restatement (Second) of Torts § 552 cmt. a. Thus, claims that seek purely economic losses must also show defendant was in the business of supplying information, defendant negligently supplied false information for the guidance of others in their business transactions, and plaintiffs suffered harm by acting in reliance on that false information. Restatement (Second) of Torts § 552; *Bonhiver v. Graff*, 311 Minn. 111, 122, 248 N.W.2d 291, 298-99 (1976).

Syngenta argues that Plaintiffs cannot rely on evidence of misrepresentations as a basis for their negligence claims because they have not pled any facts to support the higher standard for a negligent misrepresentation claim resulting in pecuniary loss. The reasonable expectations of parties to commercial transactions is a reason for a narrower scope of liability. *See* Restatement (Second) of Torts § 552 cmt. a.

13

Exhibit 1
Page 13

> On the other hand, it does not follow that every user of commercial information may hold every maker to a duty of care. Unlike the duty of honesty, the duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect. A user of commercial information cannot reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him. Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose.
>
> By limiting the liability for negligence of a supplier of information to be used in commercial transactions to cases in which he manifests an intent to supply the information for the sort of use in which the plaintiff's loss occurs, the law promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests.

Restatement (Second) of Torts § 552 cmt. a. The reasons supporting this higher standard are applicable here because Plaintiffs allege misrepresentations in the sale of seed. Plaintiffs' argument that misrepresentations and omissions of fact can form the basis of liability in negligence without satisfying all of the requirements for a negligent misrepresentation claim is unpersuasive. *See, e.g., Perry v. Schumacher Grp. of La.*, No. 2:13-CV-36-FTM-29, 2014 WL 988751, at *4-5 (M.D. Fla. Mar. 13, 2014); *In re: Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 4382772, at *9 (D. Kan. Aug. 17, 2016); *Tweet v. Syngenta AG*, No. 3:16-cv-00255-DRH, 2017 WL 54345, at *5 (S.D. Ill. Jan. 4, 2017). The cases cited by Plaintiffs to support the claim that the failure to communicate reasonably can form the basis of a standard negligence claim are distinguishable because they do not address the higher standard for claims for purely economic loss.

The vast majority of Plaintiffs in this litigation did not grow Viptera or Duracade. Syngenta's alleged misinformation was thus not made to or relied upon by Plaintiffs. Consequently, Plaintiffs did not plead a claim for negligent misrepresentation. Here, Plaintiffs have not alleged and admit they cannot show that Syngenta supplied false information to them in their business

14

Exhibit 1
Page 14

transactions or that they relied on such misrepresentations. Plaintiffs are thus precluded from asserting claims for negligence on the basis of misrepresentations.[6]

### 2. Plaintiffs' Other Claims

Syngenta argues that the express preemption provision in the GSA applies to all of Plaintiffs' claims. Consumer protection statutes are state laws and are thus subject to preemption. *See Arizona*, 132 S. Ct. at 2500; *see also Dahlman Farms, Inc. v. FMC Corp.*, 240 F. Supp. 2d 1012, 1018, 1020-21 (D. Minn. 2012) (holding that consumer fraud claim under Minn. Stat. § 325F.69 was preempted). Claims for strict liability and tortious interference impose a duty that constitutes a "requirement" that may be preempted. *See Cipollone*, 505 U.S. at 521; *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (holding strict liability claims preempted); *Angeles v. Medtronic, Inc.*, 863 N.W.2d 404, 414 & n. 1, 416 (Minn. Ct. App. 2015) (finding a strict liability failure to warn claim was preempted); *Munro v. Lucy Activewear, Inc.*, No. 16-79 (JRT/KMM), 2016 WL 5660422, at *9 (D. Minn. Sept. 29, 2016) (tortious interference claim preempted). The Court agrees that the express preemption clause applies to Plaintiffs' strict liability, tortious interference, and violation of consumer protection statutes claims. The GSA preempts any portions of these claims that impose a duty requiring the inspection or description of corn according to the presence of MIR162 as a condition of shipment or sale of the corn in interstate or foreign commerce.

The parties, however, provided no discussion of whether and to what extent the claims involve preempted duties. Upon review of the Master Complaints, the claims for violations of consumer protections statues include similar allegations as those in Plaintiffs' negligence claims. Therefore, the scope of preemption discussed above for negligence applies in the same manner to

---

[6] Evidence of misrepresentations and omissions of fact may be relevant and admissible. However, they cannot form the theory of liability for a negligence claim.

15

Exhibit 1
Page 15

Plaintiffs' claims for violations of consumer protections statutes. With respect to Plaintiffs' claims for strict liability failure to warn and tortious interference, the Court questions what portions of Plaintiffs' claims remain following preemption. For example, Plaintiffs' tortious interference claims rest on the theory that it was improper interference with their prospective contractual relations for Syngenta to sell Viptera seed without ensuring the subsequent channeling of Viptera corn to isolate it from the Chinese export channels. As discussed above, duties based on channeling are preempted because they require the inspection of corn for the presence of MIR162. However, the "primary function of notice pleading is to give the adverse party fair notice of the theory on which the claim for relief is based." *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn. 1997). Therefore, pleadings need not allege facts to support every element of a cause of action. *See id.*; *Goeb v. Tharaldson*, 615 N.W.2d 800, 818 (Minn. 2000). The Court will thus not dismiss any of the claims in their entirety at this time based on the pleadings.

### C. Implied Preemption

Syngenta argues that the GSA impliedly preempts any state-law liability related to channeling Viptera corn from other corn. The existence of an express preemption provision does not bar the application of implied preemption principles. *Arizona*, 567 U.S. 387, 132 S. Ct. at 2504-05, 183 L. Ed. 2d 351. Under the doctrine of implied preemption, States are precluded from regulating conduct when: (1) it is in a field that Congress has determined must be regulated by its exclusive governance; or (2) it is in conflict with federal law. *Id.*, 132 S. Ct. at 2501. Whether state law is impliedly preempted requires "examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000). The Court need not address implied preemption because it has concluded that claims based on a duty to ensure channeling is expressly preempted by the GSA.

Exhibit 1
Page 16

In the event Syngenta argues claims not preempted under the GSA's express provision should be impliedly preempted, it is rejected. The purpose of the GSA is to regulate foreign commerce in grain. *See* 7 U.S.C. § 74(a); *Farmers' Grain Co. of Embden*, 273 F. at 651. The GSA's express preemption clause evidences Congress's intent to limit preemption by applying only to state requirements for inspection or description, sales or shipments in interstate commerce, and only to grains. Consequently, Congress did not intend to preempt all claims in the entire field. In addition, the preemption clause states that only state laws in conflict with the GSA shall be invalid. Syngenta has not identified a conflict between the state tort law claims not preempted by the express provision and the GSA. Therefore, only those claims subject to the plain language of the express preemption clause of the GSA are preempted.

T.M.S.