IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| *IN RE SYNGENTA AG MIR 162 CORN LITIGATION*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Heartland Corn Products v. Syngenta Seeds, LLC,*<br>No. 2:20-cv-02168-JWL-JPO | Master File No. 2:14-MD-02591-JWL-JPO<br><br>MDL No. 2591 |

**PLAINTIFF HEARTLAND CORN PRODUCTS' RESPONSE IN OPPOSITION TO SYNGENTA'S MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

A. INTRODUCTION ..........................................................................................................1

B. PROCEDURAL HISTORY............................................................................................1

C. SUMMARY OF THE ARGUMENT .............................................................................2

D. FACTS ............................................................................................................................4

E. APPLICABLE LEGAL STANDARD ............................................................................7

F. ARGUMENTS AND AUTHORITIES...........................................................................8

   1. Heartland's Complaint is Timely Under Minn. Stat. § 541.05. ..............................8

      (a) Heartland's Negligence Cause of Action Did Not Accrue Until Operative Facts Existed to Support Each Element of its Claim. ..................................................................................................................8

      (b) The Statute of Limitations on Heartland's Negligence Claims Did Not Begin to Run Until the Occurrence of a Compensable Damage ............................................................................10

   2. The Continuing Tort Doctrine Tolls the Limitations Period on Heartland's Claims Against Syngenta ...................................................................11

   3. Heartland's Negligence Claims Do Not Rely on *American Pipe* Tolling...................................................................................................................12

   4. Heartland Alleges Facts Sufficient to State Claims for Negligence and Gross Negligence Under Minnesota Law ..............................................................12

G. CONCLUSION & PRAYER.........................................................................................13

# **TABLE OF AUTHORITIES**

**Case Law**

*Antone v. Mirviss*,
 720 N.W. 2d 331 (Minn. 2006)..........................................................................................2

*Brush Beryllium Co. v. Meckley*,
 284 F.2d 797 (6th Cir. 1960). ............................................................................................2

*Dalton v. Dow Chem. Co.*,
 280 Minn. 147 (1968). .......................................................................................................2

*Frederick v. Wallerich*,
 907 N.W.2d 167 (Minn. 2018)...........................................................................................8

*Hansen v. U. S. Bank Nat'l Ass'n*,
 934 N.W.2d 319 (Minn. 2019)..........................................................................................10

*Illingworth v. Greenleaf*,
 11 Minn. 235 (1866). .........................................................................................................2

*In re Pre-Filled Propane Tank Antitrust Litig.*,
 860 F.3d 1059 (8th Cir. 2017). ........................................................................................11

*In Re Syngenta AG MIR 162 Corn Litigation*,
 No. 2:14-md-2591-JWL (D. Kan. 2017) .....................................................................1, 13

*Kaiser v. Memorial Blood Center, Inc.*,
 486 N.W.2d 762 (Minn. 1992)...........................................................................................2

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997).....................................................................................................3, 11

*Lange v. Showbiz Pizza Time, Inc.*,
 12 F. Supp. 2d 1150 (D. Kan. 1998)................................................................................13

*Pace Indus., Inc. v. Three Phoenix Co.*,
 813 F.2d 234 (9th Cir. 1987). ..........................................................................................11

*Schmanski v. Church of St. Casimir*,
 243 Minn. 289 (1954). .......................................................................................................9

*Security Bank & Trade Company v. Larkin, Hoffman, Daly & Lindren, Ltd.*,
 916 N.W2d 491 (Minn. 2018)............................................................................................9

*Lubbers v. Anderson*,
 539 N.W.2d 398 (Minn. 1995)....................................................................................4, 13

**Statutes**

Minn. Stat. §541.05. ........................................................................................................2, 8

**Rules**

Fed. R. Civ. P. 12(b)(6). ......................................................................................................7

Fed. R. Civ. P. 8(c). ............................................................................................................8

### A. INTRODUCTION

Plaintiff Heartland Corn Products ("Heartland") files its Response in Opposition to Defendants Syngenta Seeds, LLC, Syngenta Corporation, Syngenta Crop Protection, LLC, and Syngenta Biotechnology, Inc.'s (collectively, "Syngenta") Motion to Dismiss Heartland's Complaint and Memorandum in Support. *See* ECF Nos. 27 and 28. For reasons more fully explained herein, Syngenta's Motion should be denied in its entirety.

### B. PROCEDURAL HISTORY

In 2018, Syngenta reached a global settlement of claims arising from the sale of its genetically modified corn seed. The global settlement included a class of 650,000 corn producers, ethanol producers, and certain grain handling facilities. Heartland chose to exercise its right to opt-out of the settlement[1] and sought to fully litigate its claims in its home state of Minnesota. On November 15, 2019, Heartland filed its Complaint in the First Judicial District Court for Sibley County, Minnesota against Syngenta seeking damages for the physical and economic harm "caused by Syngenta's decision to negligently, recklessly and prematurely market, distribute and sell genetically modified corn seed that was not approved in major U.S. markets." *See* ECF No. 1-1, Heartland Complaint and Jury Demand ("Compl.") at ¶ 1.

On December 10, 2019, Syngenta removed Heartland's action from Minnesota state court to the United States District Court for the District of Minnesota. *See* ECF No. 1, Syngenta's Notice of Removal. On January 23, 2020, the District Court approved a stipulation to stay proceedings pending a decision by the Judicial Panel on Multidistrict Litigation to transfer to this Court to proceed as part of MDL 2591. ECF No. 20. The case was subsequently transferred to this Court

---

[1] *See In re Syngenta AG MIR162 Corn Litig.*, MDL No. 2591 (D. Kan.) at ECF No. 3850-1 at 2 (Appendix to Final Order and Judgment, List of Opt-Outs from the Class).

on March 31, 2020 for inclusion in consolidated pretrial proceedings. ECF No. 22. On June 19, 2020, Syngenta filed its Motion to Dismiss Heartland's Complaint.

### C. SUMMARY OF THE ARGUMENT

In its Memorandum in Support of its Motion to Dismiss, Syngenta advances two primary arguments. *First*, Syngenta argues that Heartland's claims for damages arising from the premature commercialization of Viptera are time-barred under Minnesota law. ECF No. 28 at 3. The crux of Syngenta's argument is that Heartland's negligence claims accrued for limitations purposes in 2011 when Syngenta began marketing, distributing and selling its Agrisure Viptera corn seed and contaminating the U.S. corn and distillers' grains supply chain. *Id*. Syngenta further contends that neither the Continuing Tort Doctrine nor *American Pipe* tolling can salvage Heartland's claims. *Id*. at 6, 9. *Second*, Syngenta argues that Heartland's negligence claims should be dismissed as a matter of law to the extent they are based on alleged misrepresentations. *Id*. at 11.

Syngenta's arguments are meritless and should be rejected outright. Minnesota law recognizes that an action for negligence cannot be maintained, nor does the statute of limitations begin to run, until damage has resulted from the alleged negligence. *See Dalton v. Dow Chem. Co*., 280 Minn. 147, 153 (1968) citing *Brush Beryllium Co. v. Meckley*, 284 F.2d 797 (6th Cir. 1960) and *Illingworth v. Greenleaf*, 11 Minn. 235 (1866); *see also Antone v. Mirviss*, 720 N.W. 2d 331, 335-36 (Minn. 2006) (describing the "damage-accrual rule"). Syngenta conflates Heartland did not suffer cognizable damages such that it could maintain a claim for negligence against Syngenta until China effectively banned the import of all U.S. DDGS in July of 2014 and the price of U.S. DDGS plummeted. Compl. at ¶ 61. Syngenta agrees that the statute of limitations for negligence actions in Minnesota is six years.[2] *See* Minn. Stat. § 541.05; *see also Kaiser v. Memorial Blood*

---

[2] *See* ECF No. 28 at 3.

*Center, Inc.*, 486 N.W.2d 762, 765 (Minn. 1992). Heartland filed and served its Complaint for damages on November 15, 2019; accordingly, Heartland's Complaint was timely filed within the prescribed six-year limitations period.

Even if the Court were to accept Syngenta's argument that Heartland's negligence claims accrued for limitations purposes in 2011 when Syngenta first commercialized Viptera in the U.S. and contaminated the U.S. corn supply chain, *see* ECF No. 28 at 5, the Continuing Tort Doctrine tolls the running of the limitations period. In Minnesota, the Continuing Tort Doctrine restarts the statute of limitations period each time the defendant commits an overt act. "[E]ach overt act that is part of the violation and injures the plaintiff…starts the statutory period running again[.]" *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). Syngenta continuously marketed, sold and distributed its unapproved genetically modified corn seed traits which foreseeably contaminated the U.S. corn and distillers' grains exports and caused U.S. DDGS shipments to be repeatedly rejected by Chinese government officials, beginning in late December of 2013. Then, in 2014, Syngenta introduced Duracade without first obtaining import approvals from key export markets, which made the loss of the Chinese market not just likely, but inevitable. In July of 2014, the Chinese government effectively banned all U.S. DDGS shipments, which caused the price of U.S. DDGS to bottom out, causing billions of dollars in damages to U.S. corn industry stakeholders, including Heartland. Syngenta breached its duty of reasonable care to Heartland and proximately caused Heartland's damages by continuing to sell its genetically modified traits knowing it would contaminate the U.S. corn and DDGS supply and result in the loss of key export markets. Syngenta's conduct was ongoing and continuous. Syngenta continuously sold its unapproved seed "in total disregard of the consequences." Compl. at ¶ 63. "By negligently and prematurely commercializing its Duracade corn seed, Syngenta knowingly and intentionally intensified and

extended the disruption to, and loss of, the Chinese market and other key foreign markets to U.S. corn and corn products, including DDGS." *Id*.

Syngenta also argues that application of the limitations tolling rule set forth in *American Pipe* would not make Heartland's negligence claims timely. ECF No. 28 at 9. Heartland does not rely on *American Pipe* tolling to bring its claims within the applicable limitations period; therefore, this argument should be disregarded.

Finally, Syngenta contends that Heartland's negligence claim must be dismissed to the extent it is based on alleged misrepresentations. *Id*. at 11. Citing orders entered by this Court and Minnesota state court, Syngenta argues that Heartland cannot rely on evidence of misrepresentations as a basis for its negligence claims because Heartland has not pled any facts to support the higher standard for a negligent misrepresentation claim resulting in only pecuniary loss. *Id*. First, it should be noted that Heartland has adequately alleged its negligence and gross negligence claims. *See Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (elements of negligence claim in Minnesota). In its Complaint, Heartland sufficiently pleads (1) the existence of a duty owed by Syngenta to Heartland, *see* Compl. at ¶ 27 (2) the breach of that duty, *Id*. (3) the injury sustained by Heartland, Compl. at ¶ 28 and (4) that Syngenta's breach proximately caused Heartland's injury. Compl. at ¶ 29. Second, the Minnesota state court decision cited by Syngenta regarding the heightened pleading standard for a negligent misrepresentation claim does not apply here. Unlike the case before the Minnesota court where plaintiffs sought purely economic losses, Heartland also alleges property damage. Compl. at ¶ 27, 29.

For the reasons detailed below, Syngenta's Motion to Dismiss should be denied in its entirety.

## D. FACTS

Plaintiff Heartland is a farmer-owned cooperative that owns and operates a biorefinery in

Winthrop, Minnesota. Compl. at ¶11. Heartland produces ethanol, a biofuel made from corn, and distillers grains and dried distillers grains with solubles ("DDGS"), co-products of ethanol production. Compl. at ¶11. Heartland does not export distillers grains or DDGS to China, rather, Heartland sells its distillers grains and DDGS domestically on the open market. Compl. at ¶ 30.

As alleged in its Complaint, Heartland sustained significant damages as a direct and proximate result of Syngenta's tortious conduct. "Syngenta's commercialization of Viptera and Duracade and its continued sales of Viptera and Duracade corn seed in increasing amounts in subsequent years caused widespread physical contamination of Heartland's land and facilities, corn, distillers grains (including DDGS), equipment, storage containers, transportation facilities and machinery." Compl. at ¶ 66. Heartland asserts damages for "diminished prices for its distillers grains resulting from the loss of the Chinese export market, commercial costs, lost business opportunity, lost profits, lost sales of distillers grains, physical destruction of Heartland's property, loss of goodwill, and 'other losses' associated with Syngenta's contamination." *Id*.

### (a) Syngenta Knowingly and Recklessly Contaminated the Entire U.S. Corn and DDGS Supply Chain.

Syngenta contaminated the entirety of the U.S corn and DDGS market. "Syngenta knew that it was not possible to completely isolate Viptera from other types of corn absent the implementation by it of strict stewardship, containment, and channeling measures." *See* Compl. at ¶ 49. Because the U.S. corn marketing system is commodity-based, "Syngenta knew that unless strict stewardship and identity preservation measures were implemented at all levels – from the farm level through the marketing chain – Viptera would contaminate other U.S. corn crops, infiltrate the domestic U.S. corn and DDGS supply, and cause the closure of foreign markets that imported U.S. corn and DDGS but had not approved Viptera." Compl. at ¶ 51. "Syngenta's knowledge of this fact is indisputable." *Id*.

### (b) As Foreseen, Syngenta's Tortious Conduct Caused the Loss of the Chinese DDGS Export Market.

In late December of 2013, China began rejecting shipments of U.S. DDGS due the detection of Syngenta's unapproved Viptera trait. Compl. at ¶ 61. At all relevant times, Syngenta was aware of China's "zero-tolerance" policy for unapproved genetic traits. *Id*. Heartland alleges that "Syngenta failed to employ any meaningful or adequate stewardship, segregation, and identity preservation measures to isolate Viptera from other commercial U.S. corn." *Id*. at ¶ 53. Moreover, "Syngenta failed to adequately educate Viptera farmers and other industry stakeholders on the proper handling, stewardship, segregation, and channeling of Viptera grain to prevent contamination of the domestic corn supply." *Id*. The contamination of U.S. corn by Viptera that occurred through cross-pollination and commingling with other corn in grain elevators and storage facilities was actually foreseen by Syngenta. *Id*. at ¶ 54.

Despite the known loss of the Chinese market caused by Syngenta's premature commercialization of Viptera, in 2014, Syngenta began marketing Duracade.  In the Complaint, Heartland alleged that "[b]y improperly and prematurely commercializing its Duracade corn, Syngenta knowingly and intentionally exacerbated and prolonged the disruption to, and loss of, the Chinese market to U.S. DDGS." *Id* at ¶ 7. Though Viptera was eventually approved in China in December 2014, this approval came far too late to prevent the loss of the Chinese market to U.S. DDGS and Heartland's resulting damages.  Compl. at ¶ 64.

### (c) Syngenta Caused Damages to Heartland's Property and Business.

Syngenta's tortious conduct directly and significantly caused billions of dollars in damages to U.S. corn industry stakeholders, including Heartland. Syngenta's premature commercialization of Viptera and Duracade "caused widespread physical contamination of Heartland's land and

facilities, corn, distillers grains (including DDGS), equipment, storage containers, transportation facilities and machinery." *Id.* at ¶ 66.

Syngenta's failure to obtain the requisite import approvals from China before introducing its genetically modified corn traits into the U.S. corn supply chain resulted in the drastic drop in the price of U.S. DDGS. *Id.* at ¶ 65. Syngenta's tortious conduct has caused the U.S. corn and DDGS industry in excess of $1 billion in damages. "Heartland's damages include, but are not limited to, diminished prices for its distillers grains resulting from the loss of the Chinese export market, commercial costs, lost business opportunity, lost profits, lost sales of distillers grains, physical destruction of Heartland's property, loss of goodwill, and "other losses" associated with Syngenta's contamination." *Id.* at ¶ 66.

Heartland sustained significant damages as a direct and proximate result of Syngenta's tortious conduct and reckless disregard of the rights and financial stability of U.S. corn and DDGS industry stakeholders. *See id.*

### E.  APPLICABLE LEGAL STANDARD

Syngenta moves to dismiss Heartland's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true, *see Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992), and draws all reasonable inferences from those facts in the light most favorable to plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.) *cert. denied*, 525 U.S. 881 (1998).

The issue in reviewing the sufficiency of plaintiff's complaint is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support its claims. Although plaintiff need not precisely state each element of its claims, plaintiff must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). When reviewing a Rule 12(b)(6) dismissal on statute of limitations grounds, the Court must determine whether the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations. *Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989).

In ruling on a motion to dismiss on statute of limitations grounds, the Court may not look beyond the face of the complaint. Thus, "a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations period." *Clark v. Sears Roebuck & Co.,* 816 F. Supp. 1064, 1067 (E.D. Pa. 1993); *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n.1 (3d Cir. 1994) (although language of Fed. R. Civ. P. 8(c) indicates that statute of limitations defense cannot be raised in Rule 12(b)(6) motion to dismiss, exception is made where complaint facially shows failure to comply with limitations period and affirmative defense clearly appears on face of complaint).

### F.  ARGUMENTS AND AUTHORITIES

1. **Heartland's Complaint is Timely Under Minn. Stat. § 541.05.**

    **(a) Heartland's Negligence Cause of Action Did Not Accrue Until Operative Facts Existed to Support Each Element of its Claim.**

Minnesota's statute of limitation is six years. Minn. Stat. §541.05. "The statute of limitations begins to run when a cause of action accrues." *See Frederick v. Wallerich*, 907 N.W.2d 167, 173 (Minn. 2018) (holding that that a cause of action accrues for a legal malpractice claim when it is deemed established enough to survive a motion to dismiss for failure

to state a claim upon which relief can be granted). The Supreme Court of Minnesota defined "accrual" in *Security Bank & Trade Company v. Larkin, Hoffman, Daly & Lindren, Ltd.* as "the point in time when a plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Security Bank & Trade Company v. Larkin, Hoffman, Daly & Lindren, Ltd.,* 916 N.W2d 491, 496 (Minn. 2018). Therefore, in order for the Court to consider whether a cause of action has accrued for limitations purposes, a plaintiff must be able to provide operative facts in support of every element of the cause of action in question. In other words, all the legal elements of the cause of action must be present.

Under Minnesota law, there are four legal elements to Heartland's negligence claim: (1) a duty, (2) a breach of duty by defendant, (3) proximate causation, and (4) injury. *See Schmanski v. Church of St. Casimir*, 243 Minn. 289, 292 (1954).

As stated in Heartland's Complaint, "Syngenta had a duty to refrain from commercializing Viptera and Duracade in a manner that would foreseeably cause harm to Heartland, to use ordinary care in its commercialization of Viptera and Duracade, and to protect Heartland from an unreasonable risk of harm. Syngenta owed Heartland a duty of reasonable care concerning the timing, manner, and scope of its commercialization of Viptera and Duracade." Compl. at ¶ 69. Syngenta breached its duties to heartland by failing to exercise reasonable care when it did not "prevent the foreseeable contamination of the U.S. corn supply." *Id*. By failing to employ the appropriate measures and educate the farmers and industry stakeholders, Syngenta, Heartland's land, produce and facilities were contaminated. *See* Compl. at ¶66. Syngenta's negligent commercialization of Viptera and Duracade without obtaining the requisite approval from China caused Heartland's damages. *See id*. at ¶ 66.

Heartland did not immediately begin to incur damages when Syngenta prematurely commercialized its Viptera corn seed in 2011. Heartland did not begin to incur compensable

Page 9

damages until China began rejecting U.S. DDGS shipments and the U.S market main corn importers effectively banned U.S corn shipments. *Id*. at ¶61. At the earliest, Heartland suffered from compensable damages in December 2013 when "the "the Chinese officials stated that shipments of DDGS from the U.S were contaminated with Viptera." *Id*. at §61. Heartland's damages occurred in July 2014, when the U.S. lost the Chinese DDGS market in July of 2014. At that point, Duracade was commercialized which multiplied the number of rejected shipments from foreign countries, deepened the U.S corn market's damages and thus causing Heartland's damages.

Since the third legal element of the cause of action claimed by Heartland was only satisfied at the earliest in December 2013, the cause of action of negligence and/or gross negligence accrued only then. Actually, a negligence and/or gross negligence cause of action would have been able to survive a motion to dismiss for failure to state a claim upon which relief can be granted only starting December 2013 at the earliest.

In conclusion, the statute of limitation began to run starting December 2013 at the earliest. As stated before, the statute of limitation in Minnesota is six-years, therefore, on November 15, 2019, Heartland's claim against Syngenta was timely.

### (b) The Statute of Limitations on Heartland's Negligence Claim Did Not Begin to Run Until the Occurrence of a Compensable Damage.

Minnesota recognizes the "some damage" rule in deciding whether a cause of action accrued for limitations purposes. *Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d 319 (Minn. 2019) (holding that a cause of action does not accrue based on purely speculative harm). In *Hansen*, the Minnesota Supreme Court explained that a damage must be compensable in order for the cause of action to accrue and that "financial damage occurs when the plaintiff first **actually** loses money or otherwise suffers financial harm." *Id at 328*.

As stated previously under section A of this response, Heartland actually started losing money between December 2013 at the earliest, and July 2014, which means, it suffered from a compensable damage only starting December 2013 and not before. Therefore, under the "some damage" rule of accrual, as stated by Defendants, Heartland's cause of action did not accrue until December 2013 at the earliest. Therefore, Heartland's Complaint against Syngenta is timely.

### 2. The Continuing Tort Doctrine Tolls the Limitations Period on Heartland's Claims Against Syngenta.

Even though Heartland's claim was timely and thus Heartland does not need to plead the Continuing Tort Doctrine, it should be noted that the Doctrine applies here. In Minnesota, the Continuing Tort Doctrine applies as an exception to the Statute of limitation. The Continuing Tort Doctrine restarts the statute of limitations period each time the defendant commits an overt act. *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (holding that "each sale to the plaintiffs in a price-fixing conspiracy starts the statutory period running again." *Id.*) "An overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the plaintiff." *Id.* (*citing Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987), holding that "the last overt act in the enforcement of this contract was the initiation of the lawsuit in state court. Any injury to [Appellant] resulting from continued prosecution through the normal course of the appellate process relates back to the initial decision to file." *Id.*) In *Klehr v. A.O. Smith Corporation*, the U.S. Supreme Court held that "each overt act that is part of the violation and that injures the plaintiff, *e.g., each sale to the plaintiff,* starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr*, 521 U.S. at 189.

Syngenta committed Continuous violations on two levels. First, Syngenta's continuous commercialization of its product, Viptera constituted several overt acts since every sale of Viptera was a new and independent act that was causing new and accumulating injury to Heartland. Second, the creation, marketing and commercialization of Duracade, a new product that is also unapproved and also causes cross-pollination was an overt act, since it was a new breach that caused a new injury. In fact, Duracade's commercialization caused a significant portion of Heartland damages.

Syngenta was committing ongoing violations, therefore the Continuing Tort Doctrine applies and tolls the running of the statute of limitations on Heartland's claims.

### 3. Heartland's Negligence Claims Do Not Rely on *American Pipe* Tolling.

Syngenta attempts to argue that Heartland's claims accrued in the fall of 2010 or spring of 2011 when Viptera was commercialized. In its motion, Syngenta includes a whole argument about how Heartland cannot allege *American Pipe* tolling in order to toll the statute of limitations. ECF No. 28 at 9. Syngenta explains that *American Pipe* tolling would only allow 696 days to be excluded from the statute of limitations. ECF No. 28 at 9,10. The Court, however, does not need to go through these mathematical calculations. As explained above, Heartland does not rely on tolling of the limitations period under *American Pipe*.

### 4. Heartland Alleges Facts Sufficient to State Claims for Negligence and Gross Negligence Under Minnesota Law.

Heartland's Complaint contains allegations sufficient to sustain valid negligence and gross negligence claims against Syngenta. Heartland agrees with Syngenta that it has not pled a misrepresentation claim. Heartland does not merely contend that Syngenta lied to the public and to farmers, Heartland alleges that Syngenta owed a duty to act with reasonable care, and that Syngenta breached its duty by failing to (1) "exercise reasonable care to prevent the foreseeable

contamination of the U.S. corn supply", (2) "provide adequate channeling and stewardship programs which would have avoided contamination by cross-pollination and commingling," (3) "engag[ing] in several acts of wrongdoing which not only increased the risk of contamination of the U.S. commercial corn and DDGS supply and the closure of the Chinese market to U.S DDGS, but made it inevitable". Compl. at ¶ 70. As a proximate cause of Syngenta's breaches of duty, Heartland incurred increased commercial costs, loss of business opportunity, loss of profits, loss of sales of distillers grains, physical destruction of Heartland's property, loss of goodwill, and 'other losses' associated with Syngenta's contamination. Compl. at ¶ 66; *also Lubbers*, 539 N.W.2d at 401.

Syngenta's reliance on the District Court of State of Minnesota's holding is misplaced. ECF No. 28 at 1. In the Minnesota state court case, the court held that a higher standard of proof is required for negligent misrepresentation in claims that seek purely economic losses. *See In re Syngenta*, No. 27-CV-153785 (D. Minn). *See* ECF No. 28-1 at 13. Therefore, this ruling does not apply because, unlike the case before the Minnesota court where plaintiffs sought purely economic losses, here, Heartland is alleging damage to its property.3  Compl. at ¶ 27, 29.

### G. CONCLUSION & PRAYER

For these reasons, this Court should deny Syngenta's Motion to Dismiss Heartland's Complaint in full.  In the alternative, to the extent that the Court finds Heartland did not sufficiently plead details to support the claim within the Complaint, Heartland requests leave to amend its Complaint to more fully allege the contents of the claim of negligence. Finally, Heartland

---

3 *See also In Re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591 Case No. 14-md-2591-JWL (D. Kan.) at ECF No. 28-1 at 13 (denying Syngenta's motion to dismiss plaintiff producers and non-producers' negligence claims).

respectfully asks this Court to grant it any other such further relief to which Heartland may be justly entitled, at law or inequity.

Dated:  August 10, 2020     Respectfully submitted,

*/s/ Martin J. Phipps*
Martin J. Phipps
TX State Bar No. 00791444
**PHIPPS ANDERSON DEACON LLP**
102 9th Street
San Antonio, Texas 78215
Telephone: (210) 340-9877
Facsimile: (210) 340-9899
mphipps@phippsandersondeacon.com


Michael K. Johnson (0258696)
Timothy J. Becker (0256663)
**JOHNSON BECKER, PLLC**
444 Cedar St., Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
mjohnson@johnsonbecker.com
tbecker@johnsonbecker.com


**ATTORNEYS FOR PLAINTIFF,
HEARTLAND CORN PRODUCTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users, including all counsel of record.

*/s/ Martin J. Phipps*
MARTIN J. PHIPPS